IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

DAVID WAYNE LYNN            )
                            )
v.                          )        No. 2:19-0106
                            )
ANDREW M. SAUL,             )
Commissioner of Social Security )

**To:**   The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 17), to which Defendant has filed a response. (DE 18.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 17) be **DENIED**.

# I. INTRODUCTION

Plaintiff filed an application for DIB on March 17, 2016 and an application for SSI on October 13, 2016. (*See* Transcript of the Administrative Record (DE 13) at 15, 107.)[1] He alleged a disability onset date of August 21, 2015 and asserted that he was unable to work because of problems with his knee, back, and neck, arthritis, and mental conditions. (AR 15, 107, 158.) Plaintiff's applications were denied initially and upon reconsideration. (AR 152-53.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at an initial hearing before ALJ Todd Spangler on March 19, 2018, and later appeared at a supplemental hearing on September 25, 2018. (AR 45, 59.) The ALJ denied the claim on December 20, 2018. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on October 31, 2019 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since August 21, 2015, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

---

[1] The Transcript of the Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

3. The claimant has the following severe impairments: degenerative disc disease, osteoarthritis of the knee, bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder, and a history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant may occasionally climb ramps or stairs, but never ladders, ropes or scaffolds. He may occasionally balance, stoop, kneel, crouch, and crawl. He may frequently reach overhead bilaterally. He must avoid concentrated exposure to extreme cold, vibration, and hazards. He may perform simple and detailed tasks and is limited to no more than occasional contact with coworker[s], supervisors, and the public. Any changes must be introduced gradually and infrequently.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 16, 1966 and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 21, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 17-26.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be

4

resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable

5

to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 17-26.)

### C. Plaintiff's Assertion of Error

Plaintiff presents two assertions of error: (1) that the ALJ failed to ask a vocational expert during the administrative hearing whether her opinion was consistent with the Dictionary of Occupational Titles ("DOT"); and (2) that the ALJ improperly credited the opinions of non-examining state agency physicians while discounting the opinions offered by examining physicians. (DE 18 at 13, 15.) Plaintiff therefore requests that this case be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 16.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

### 1. The Vocational Expert's Testimony.

The ALJ in this matter relied on testimony provided by a vocational expert during the administrative hearing to support his ultimate RFC formulation, as is permitted. *See Varley v. Sec'y*

6

*of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (noting that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question" regarding a claimant's ability to perform specific jobs). In constructing a hypothetical question to be posed to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff argues that the ALJ committed reversible error by failing to ask the vocational expert – who testified in response to multiple hypotheticals that Plaintiff would be able to perform several jobs in the national economy despite his functional limitations (AR 54-57) – whether her testimony conflicted with the DOT, which is a publication that "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 404.1569. Plaintiff bases his argument on Social Security Ruling ("SSR") 00-4p, which imposes an "affirmative responsibility" on the ALJ to ask the vocational expert whether her proffered testimony is consistent with the information included in the DOT and to resolve any "apparent conflicts." 2000 WL 1898704, at *2, 4 (Dec. 4, 2000).[2]

During the administrative hearing, the ALJ presented a hypothetical question to the vocational expert that ultimately formed the basis of the assigned RFC:

> Here's the first hypothetical. Light exertion, no more than occasional ramps and stairs. No ladders, ropes or scaffolding. No more than occasional balancing, stooping, kneeling and crouching and crawling. No more than frequent reaching overhead bilaterally. Avoid concentrated exposure to extreme cold, vibration and hazards. Simple and detailed tasks, no more than occasional contact with co-

---

[2] Social Security Rulings "do not have the force and effect of law but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272, n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

7

workers, supervisors and the public. Changes should be introduced gradually and infrequently.

(AR 54-55.) After confirming that such limitations would preclude Plaintiff's performance of any past relevant work, the vocational expert identified three jobs that Plaintiff would be able to perform: (1) Inspector (DOT code 559.687-074), of which there are 130,000 jobs nationally; (2) Garment Sorter (DOT code 222.687-014), of which there are 200,000 jobs nationally; and (3) Assembler Small Products (DOT code 706.684-022), of which there are 224,000 jobs nationally. (AR 54-55). Plaintiff now contends that the ALJ was not permitted to rely on such testimony to support a finding of non-disability "[b]ecause the ALJ's hypothetical included a limitation that limited the number of jobs[.]" (DE 18 at 13.)

Defendant argues that although the ALJ neglected to directly ask the vocational expert whether any such conflict with the DOT existed, this "minimal error" does not warrant reversal of the Commissioner's decision. (DE 19 at 6.) The Court agrees. First, an ALJ's technical violation of SSR 00-4p does not automatically mandate reversal of the Commissioner's decision. *See Mejias v. Comm'r of Soc. Sec.*, No. 3:07-CV-2813, 2009 WL 700998, at *4 (N.D. Ohio Mar. 16, 2009) ("Even when an ALJ violates SSR 00-4p, however, courts do not find remand necessary if the error was harmless."). The pertinent issue is whether there was in fact an apparent inconsistency between the vocational expert's testimony and the DOT "such that the ALJ should have asked [the vocational expert] to explain the conflict." *Green v. Comm'r of Soc. Sec.*, No. 3:15-CV-00910-TBRCHL, 2017 WL 1160580, at *3-4 (W.D. Ky. Mar. 28, 2017).

Here, Plaintiff has not identified any such conflict. Plaintiff instead asserts broadly that "the light jobs would be reduced" if an individual were subject to the additional limitations included in the hypothetical, namely those relating to exposure to extreme cold, vibration and hazards, the ability to perform simple and detailed tasks, and the capacity for contact with other

8

people. (DE 18 at 13.) Yet the vocational expert identified the three jobs – inspector garment sorter, and assembler – without any reduction, specifically in response to a hypothetical that included such limitations. (AR 54-55.) The vocational expert did indicate that the availability of such jobs would be reduced by 50 percent *if* a "five-minute break every 60 minutes" were part of the hypothetical individual's restrictions (AR 56), but the ALJ ultimately found that Plaintiff was not subject to such a limitation and therefore did not rely on such testimony. (AR 20.) Plaintiff has "failed to identify any inconsistency between the [vocational expert's] testimony and the DOT" that would rise to the level of reversible error. *Rooks v. Astrue*, No. 1:07-CV-00139-J, 2008 WL 1901397, at *5 (W.D. Ky. Apr. 24, 2008).

Additionally, the Court notes that Plaintiff's counsel opted not to examine the vocational expert during the administrative hearing regarding any of the jobs at issue, thereby waiving any argument regarding the sufficiency of the ALJ's technical compliance with SSR 00-4p. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Because [the claimant] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."). *See also Green*, 2017 WL 1160580, at *4 ("[The claimant] cannot now complain that [the vocational expert's] testimony conflicted with the job description in the [DOT] when he had the opportunity to elicit testimony to that effect at the hearing and did not.") (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)). The record shows that the ALJ appropriately obtained testimony in response to hypothetical questions that accurately portrayed the severity of Plaintiff's condition and formulated a corresponding RFC based on such information. Plaintiff identifies no actual error in this process. Therefore, to the extent that the ALJ violated SSR 00-4p, the Court concludes that such error is harmless.

### 2. The ALJ's Evaluation of Medical Opinions.

The next assertion of error involves the ALJ's decision to exercise his discretionary authority to require Plaintiff to undergo two consultative examinations following the initial administrative hearing. *See* 20 C.F.R. § 404.1520b(b)(2) (if the evidence in the administrative record is insufficient, the Commissioner "may ask [the claimant] to undergo a consultative examination at [the Commissioner's] expense"). The ALJ's stated justification for doing so was that two of the opinions in the record provided by non-examining state agency physicians – completed in June and of July 2016 (AR 98, 102-04) – were "confus[ing]." (AR 86-87.) Plaintiff thereafter appeared for a mental examination performed by Alice Garland on April 5, 2018 and an "all systems" examination performed by Dr. Terrence Leveck on April 6, 2018. (AR 1663, 1674.)

Ms. Garland diagnosed Plaintiff with "recurrent moderate" major depressive disorder ("MDD"), alcohol use disorder in remission per Plaintiff's self-reporting, opioid use disorder in remission per Plaintiff's self-reporting, and sedative hypnotic anxiolytic dependence. (AR 1677.) Significantly, Ms. Garland stated she was "not sure about [the] veracity of his self-report of alcohol and drug use." (AR 1674.) Regardless, based on her interview of Plaintiff and a review of multiple mental health records, Ms. Garland opined that Plaintiff was moderately to markedly limited in several areas of mental functioning, including his ability to carry out complex instructions, interact appropriately with the public and coworkers, and respond appropriately to changes in a work setting. (AR 1678-79.) In her accompanying medical source statement, Ms. Garland noted that alcohol and drugs "may have been a factor" in causing these restrictions and reiterated that Plaintiff's statements regarding his use of substances "may not be reliable." (AR 1679.) The ALJ accorded "little weight" to this opinion based on his determination that Ms. Garland's proffered

10

mental limitations were unduly reliant on substance abuse, which, according to the ALJ, was in remission. (AR 22-23.)

Plaintiff presented to Dr. Leveck the following day. Dr. Leveck diagnosed Plaintiff with cervical spine pain following a prior discectomy and fusion with "moderately decreased range of motion," lower back pain with "unremarkable" examination findings, and arthralgia of the right knee. (AR 1665.) Dr. Leveck also listed diagnoses of bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), anxiety, and a history of drug and alcohol abuse. (AR 1665.) Dr. Leveck opined that Plaintiff would be able to lift 20 pounds occasionally and 10 pounds frequently, and that Plaintiff could sit, stand, and walk for eight hours per eight-hour workday, with a five-minute break for every 60 minutes of standing and walking. (AR 1666.) The ALJ gave "little weight" to this opinion based on the inconsistency between Dr. Leveck's non-exertional limitations and the frequently normal range of motion findings contained in the record. (AR 22.) The ALJ also discounted the opinion due to Dr. Leveck's claim that Plaintiff would never be able to balance, which, according to the ALJ, would not be compatible with Dr. Leveck's additional finding that Plaintiff could walk for eight hours per workday. (AR 22.)[3]

Plaintiff contends that the ALJ's weight allocation with respect to these two consultative examination reports is not supported by substantial evidence. Plaintiff faults the ALJ for relying instead on the opinions of non-examining state agency physicians because they were issued prior to January of 2017, which, according to Plaintiff, fails to account for the "extensive" treatment he received after January of 2017. (DE 18 at 16.) Plaintiff also points to treatment he received prior to 2017 from Dr. Gregory Lanford (AR 1277-83), nurse practitioner Japheth Harding (AR 861-

---

[3] The ALJ erroneously described the report as finding that Plaintiff could walk for six hours per day (AR 22), when Dr. Leveck in fact concluded that Plaintiff could walk for all eight hours of a workday. (AR 1668.)

11

72), and Dr. Brian Fuller (AR 1523-42), as evidence that was not available to the non-examining state agency physicians. (DE 18 at 15.)

Plaintiff's general suggestion that it was improper for the ALJ to accord greater weight to opinions authored by physicians without access to the entire administrative record is inconsistent with Sixth Circuit precedent. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a complete or more detailed and comprehensive case record. The opinions need only be supported by evidence in the case record.") (internal citation and quotations omitted). It is true that the existence of ongoing treatment notes following the issuance of opinions from non-examining state physicians warrants "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakley*, 581 F.3d at 409. However, the relevant issue in such a case – and indeed, in every Social Security appeal – is whether the ALJ's weight assignments are supported by substantial evidence. *See Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751, at *11 (N.D. Ohio Mar. 11, 2015) ("An ALJ's unsupported rejection of a treating source and reliance on non-examining sources without full access to the record appeared to be the 'overriding danger' that existed in *Blakley,* is not similarly present here.") (internal citation omitted).

With this in mind, the Court finds that substantial evidence supports the ALJ's findings. First, the ALJ clearly considered the treatment that took place after January of 2017, as his opinion included explicit references to physical examination findings from February and June of 2017 (AR 18, 1329, 1644-46) and mental examination findings from January, June, and July of 2017. (AR 19, 21, 22, 899, 907, 1550, 1553, 1566, 1569.) The ALJ specifically highlighted conservative treatment recommendations from Dr. William Shell in February 2017 (AR 1329) ("I do not feel

that we need[] to do anything beyond just some strengthening exercises"), which itself bolsters the ALJ's ultimate conclusion that Plaintiff is not disabled. *See Branson v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (holding that a treating provider's "conservative treatment approach suggests the absence of a disabling condition"). The ALJ also cited specific findings from Plaintiff's treatment with Dr. Lanford and Dr. Fuller (AR 21-22). The ALJ therefore provided a comprehensive synopsis of the treatment that took place both before and after the state agency opinions were issued, which extinguishes the possibility of any inconsistency with the *Blakley* decision. *See Kitchen v. Colvin*, No. 3:16-cv-0020, 2017 WL 395087, at *9 (M.D. Tenn. Jan. 30, 2017), *report and recommendation adopted sub nom. Kitchen v. Berryhill*, 2017 WL 1018432 (M.D. Tenn. Mar. 16, 2017) ("The ALJ … provided a thorough summary of the medical records pre-dating and post-dating the state agency providers' opinions. Thus, the ALJ's reliance on the state agency examiners' opinions does not run afoul of *Blakley*.").

Notably, Plaintiff does not actually assert that any of the treatment following January 2017 substantiates implementation of a more restrictive RFC than was assigned by the ALJ. Nor does the record support such a finding given that the very medical notes Plaintiff relies on as part of his argument show the following: "well managed" knee pain on December 6, 2016 (AR 861), x-rays demonstrating the absence of any abnormalities in Plaintiff's right knee on February 20, 2017 (AR 1300), physical examination findings showing a normal range of motion in all extremities and no problems with gait or station on June 7, 2017 (AR 1478), and a recommendation from an orthopedist that Plaintiff "just [perform] some strengthening exercises." (AR 1329.) Plaintiff has failed to identify any evidence that the ALJ overestimated the extent of his physical functionality.

Plaintiff's argument regarding his mental treatment fares no better. Despite Plaintiff's claim of "extensive, consistent psychological treatment after January of 2017" (DE 18 at 16), the

13

record instead reflects intermittent treatment accompanied by a host of cancelled appointments and failures to appear. (AR 1575-84, 1601-02, 1614-15, 1687-94, 1704-06.) While the absence of regular care with a mental health provider is not necessarily proof of a non-disabling condition, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989), it certainly undermines Plaintiff's current suggestion that Ms. Garland's opinion should have been more highly regarded based solely on its correlation with "consistent" findings during his post-January 2017 treatment.

Moreover, Plaintiff's argument that Ms. Garland's opinion is "consistent with … Mr. Lynn's testimony" (DE 18 at 16) is simply inaccurate. In contrast to Plaintiff's statement at the administrative hearing that he had not used alcohol or drugs since July of 2017 (AR 68), Ms. Garland's report – dated April 5, 2018 – questioned the reliability of Plaintiff's claim that he no longer used any substances four different times. (AR 1674, 1676, 1679.) She opined that Plaintiff's ability to handle his own finances in the event of a disability award "would be dependent on his use of drugs and alcohol." (AR 1676.) And when prompted to identify whether "alcohol and/or substance abuse … contribute to any of the claimant's limitations," she specifically responded by noting his "history of abuse" before again questioning the veracity of his claims of sobriety. (AR 1679.) Indeed, Plaintiff's substance abuse is the *only* specific "factor" Ms. Garland identifies in support of any of her proffered limitations. (AR 1679.) Instead of accepting this explanation, the ALJ credited Plaintiff's testimony that he had abstained from any substance use since July of 2017, a finding that is virtually "unchallengeable" at this level of review. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). Plaintiff identifies no medical records to rebut this conclusion or otherwise refute the ALJ's evaluation of Ms. Garland's opinion.

The opinion of a one-time examining provider is "not entitled to any special deference." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). This is especially

14

problematic for Plaintiff's claim considering the absence of an opinion from a treating physician in the administrative record. It was therefore entirely appropriate for the ALJ to rely on the reports of the state agency physicians, and Plaintiff does not meaningfully argue that these opinions lack support in the record. Because the Court finds that substantial evidence supports the ALJ's decision to discount the opinions provided by Dr. Leveck and Ms. Garland, this assertion of error is rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 17) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge